*Del Ciello-Blatt v. Baker, et al.*

# EXHIBIT A

**Complaint**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| JUNE 2012   000604 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| FRANCINE DEL CIELLO-BLATT | PENNSYLVANIA DEPARTMENT OF HEALTH |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 737 Wisteria Drive<br>Warrington, PA 18976 | Department of Public Health, 1101 Market Street, 8th Floor,<br>Philadelphia, PA 19107 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | ANNE BAKER |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | Pennsylvania Department of Health, Health & Welfare Bldg.,<br>8th Floor West, 625 Forster St., Harrisburg, PA 17120 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | TODD SHAMASH |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | Pennsylvania Department of Health, Health & Welfare Bldg.,<br>8th Floor West, 625 Forster Street, Harrisburg, PA 17120 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 4 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Minor Court Appeal<br>☐ Statutory Appeals<br>☐ Commerce (Completion of<br>   Addendum Required) | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

**CASE TYPE AND CODE (SEE INSTRUCTIONS)**

Contract (1C); Tort-Other (2E)

**STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)**

43 Pa.C.S.A. Section 1421 et seq.; 42 U.S.C. Section 1983

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO<br>COORDINATION ORDER? | |
|---|---|---|---|
| None of which plaintiff is aware | Del Ciello-Blatt Vs Pa Department Of Health -CMPLT | Yes | No |
| | | ☐ | ☒ |
| | 12060060400005 | ☐ | ☒ |
| | | ☐ | ☒ |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Anthony J. Bolognese | Bolognese & Associates, LLC<br>Two Penn Center<br>1500 John F. Kennedy Blvd., Suite 320<br>Philadelphia, PA 19102 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215) 814-6750 | (215) 814-6764 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 36937 | abolognese@bolognese-law.com |

| SIGNATURE | DATE |
|---|---|
| *[signature]* | June 6, 2012 |

01-101 (Rev. 6/06)

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
## (Supplemental Parties)

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | JUNE 2012   000604 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | MICHAEL WOLF |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | Pennsylvania Department of Health, Health & Welfare Bldg., 8th Fl. West, 625 Forster St Harrisburg, PA 17120 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

01-102

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA

FRANCINE DEL CIELLO-BLATT,      :     JUNE TERM 2012

Plaintiff,      :     NO.:

v.      :

ANNE BAKER, TODD SHAMASH,      :
MICHAEL WOLF, and PENNSYLVANIA      :
DEPARTMENT OF HEALTH,      :

Defendants.     

**JUNE 2012**

**000604**

**NOTICE TO DEFEND**

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

**10-284**

**BOLOGNESE & ASSOCIATES, LLC**                          *Attorneys for Plaintiff*
By:      Anthony J. Bolognese, Esquire                   *Francine Del Ciello-Blatt*
         Joshua H. Grabar, Esquire
Two Penn Center
1500 John F. Kennedy Blvd., Ste. 320
Philadelphia, PA  19102
Telephone: (215) 814-6750
Attorney I.D. No.: 36937, 82525

### IN THE PENNSYLVANIA COURT OF COMMON PLEAS
### PHILADELPHIA COUNTY

| | | |
|---|---|---|
| **FRANCINE DEL CIELLO-BLATT,** | : | **JUNE TERM 2012** |
| | : | |
| | : | **NO.:** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANNE BAKER, TODD SHAMASH,** | : | |
| **MICHAEL WOLF, and PENNSYLVANIA** | : | **JURY TRIAL DEMANDED** |
| **DEPARTMENT OF HEALTH,** | : | |
| | : | |
| **Defendants.** | : | |

### COMPLAINT

    Plaintiff Francine Del Ciello-Blatt ("plaintiff"), by and through her undersigned counsel,

for her Complaint against defendants, alleges as follows:

**I.      Introduction and Background**

    1.      Francine Del Ciello-Blatt, a dedicated public servant, was wrongfully terminated

from her position as Special Assistant to the Secretary of Health of the Commonwealth of

Pennsylvania because in carrying out her job responsibilities, she identified and uncovered

substantial waste and abuse of public funds, attempted to stop it, attempted to implement

safeguards and controls to prevent it from happening again, and reported these matters to those in positions of responsibility (including the Office of the Inspector General of the Commonwealth). Plaintiff was fired at the instigation and behest of those who were responsible for the waste and abuse of funds that she reported, and their supporters, including the defendants named in this lawsuit.

2.       Defendants orchestrated plaintiff's firing, without justification, because plaintiff uncovered the substantial mishandling and waste of increasingly scarce and vitally needed state and federal healthcare funds, tirelessly and persistently tried to do something about it, spoke out at the Department of Health and to the Commonwealth's Inspector General's office. Plaintiff did so because the offending issues fell squarely within her job responsibilities, and the matters that plaintiff had uncovered and had spoken out about were severely compromising the mission of the Department of Health. Plaintiff was attempting to shine a light on and halt the substantial squandering of state and federal taxpayer funds dedicated to this mission, and the potential loss of substantial federal subsidies that the Commonwealth would otherwise be entitled to.

3.       Plaintiff tirelessly attempted to work through the Department of Health because an essential term of her job, agreed to at the time she was hired, was that she would be permitted to "function[] with considerable latitude and authority in a broad range of matters, *i.e.,* administrative, operations and policy matters." Having conferred upon plaintiff this "considerable latitude and authority in a broad range of matters," defendants sought to silence her and obstruct her gathering of information when she did her job. In an effort to silence plaintiff and bury the concerns she was raising, defendants orchestrated plaintiff's firing only after she responded, truthfully, to the inquiries of the Inspector General's Office, and then, in order to

2

conceal the real reason for her firing, defendant Baker initiated a campaign to fabricate a bogus reason for plaintiff's termination.

4.    Rather than try, responsibly, to address the serious mishandling and waste of public funds that plaintiff had uncovered and brought to their attention and to the attention of others at the Department of Health with the power and the authority to investigate such matters, as alleged in this Complaint, defendants conspired, in essence, to "kill the messenger." They did so because plaintiff was "rocking the boat" by exposing matters that defendants would rather keep buried, because exposing these matters revealed that defendants Baker, Wolf and their allies were responsible for the mishandling of funds and other matters that plaintiff was uncovering. Defendants and their allies thus decided that it was easier to get rid of plaintiff, rather than come to terms with and address the valid substance of the concerns she had raised. Defendants thought they could bury these matters if they simply got rid of plaintiff. Defendant Baker and others at the Department of Health then concocted false and defamatory pretexts for the firing of plaintiff, orchestrating a campaign to solicit and encourage certain of their key allies at the Department of Health to report scripted and coordinated falsehoods about plaintiff (the full substance of which have never been disclosed or explained to plaintiff). The mishandling of funds and waste about which plaintiff spoke out, all matters of legitimate and intense public interest, resulted in the loss, squandering and inequitable and improper allocation of the Department of Health and available federal resources to the detriment of the Department of Health and the taxpayers who fund its operations, and compromised a key part of the mission of the Department of Health. Plaintiff truthfully and dutifully responded to questions about some of the issues she had raised from the Commonwealth's Inspector General, whose mission is to prevent, investigate and eradicate fraud, waste and abuse, and misconduct in programs,

operations, and contracting of executive agencies.  After she spoke to the Inspector General,

plaintiff was fired.

**II.     The Parties**

5.      Plaintiff Francine Del Ciello-Blatt is a citizen and resident of the Commonwealth

of Pennsylvania.  Plaintiff was employed and served as Special Assistant to the Secretary of

Health of the Commonwealth of Pennsylvania during the period from February 28, 2011 until

she was wrongfully terminated on February 27, 2012.

6.      Defendant Anne Baker, served as Deputy Secretary of Administration,

Department of Health of the Commonwealth of Pennsylvania, at all times relevant to this action.

She is believed to be a citizen and resident of the Commonwealth of Pennsylvania.  Defendant

Baker was a material participant in the improper termination of plaintiff's employment, as

alleged in this Complaint.

7.      Defendant Todd Shamash, served as Deputy Chief of Staff, Office of the

Governor of the Commonwealth of Pennsylvania, at all times relevant to this action.  He is

believed to be a citizen and resident of the Commonwealth of Pennsylvania.  Defendant Shamash

was a material participant in the improper termination of plaintiff's employment, as alleged in

this Complaint.

8.      Defendant Michael Wolf, served as Executive Deputy Secretary, Department of

Health of the Commonwealth of Pennsylvania, at all times relevant to this action.  He is believed

to be a citizen and resident of the Commonwealth of Pennsylvania.  Defendant Wolf was a

material participant in the improper termination of plaintiff's employment, as alleged in this

Complaint.

4

9.     The Pennsylvania Department of Health is an agency of the Executive Branch of

Pennsylvania's state government, and as such is an instrumentality of the Commonwealth of

Pennsylvania. The Department represents on its internet website that its "mission is to promote

healthy lifestyles, prevent injury and disease, and to assure the safe delivery of quality health

care for all Commonwealth citizens," and in that regard it works "collaboratively with public and

private partners in [its] communities to facilitate the development of an effective public health

system that promotes the optimal health of its citizens while reducing the need for health care."

The Department represents that it "is responsible for planning and coordinating health resources

throughout the Commonwealth. It licenses and regulates a variety of health facilities, such as

hospitals, nursing homes, ambulatory surgical facilities and other in-patient and out-patient

facilities. In addition, the Department supports outreach, education, prevention and treatment

services across a variety of program areas. Grants and subsidies to community-based groups are

used to provide essential services to the Commonwealth's citizens including programs for

women and children, nutrition, immunization, diagnosis and treatment of certain blood and

communicable diseases, cancer control and prevention, and the prevention and treatment of

substance abuse." The Department also represents that it redirects "funding and programmatic

activities toward outcomes-based performance standards," and that "[t]hrough its contracting and

grants process, it strives to create durable community-based partnerships that strengthen healthy

families and individuals in their local communities while enhancing the delivery of health care,"

and that "[t]he ultimate goal of the Department is to ensure access to health care while assuring

quality of care."

III.    **Venue**

10.    Venue is properly found in this Court because, during the period of time relevant to this action, the defendants each personally and extensively transacted the business of the Commonwealth of Pennsylvania within the City of Philadelphia, and each spent a substantial amount of time in the City in connection therewith.  The Pennsylvania Department of Health conducts substantial and extensive operations in the City of Philadelphia.  The Department of Health's operations in the City of Philadelphia, and the Department's dealings with the City of Philadelphia and the relevant healthcare constituencies affected by the conduct alleged in this Complaint, are at the core of the events that gave rise to plaintiffs' improper termination and to the claims that are asserted in this lawsuit.  The primary areas in which plaintiff exposed the misuse and waste of vital public funds (as detailed more fully in this Complaint) and the effects of the conduct giving rise to plaintiff's claims had a disproportionate economic and operational effect upon and within the City of Philadelphia, and upon the constituencies who were vitally dependent upon the funds that were wasted and jeopardized as a result of the conduct that gives rise to plaintiff's claims.  Defendant Shamash regularly conducts and performs his job responsibilities in the City of Philadelphia, and defendants Baker (who accompanied plaintiff to Philadelphia in connection with the matters at issue in this case) and defendant Wolf (who regularly conducted and performed his job responsibilities within the City of Philadelphia), and their actions as alleged in this Complaint had a significant and disproportionate effect upon the operations and mission of the Department of Health in the City of Philadelphia.  The interaction between the Department of Health, the individual defendants and plaintiff with the municipal governmental and non-governmental healthcare agencies, institutions and individuals that

underlie and give rise to plaintiffs' claims took place within and had a disproportionate effect within the City of Philadelphia, and many key witnesses are located in Philadelphia.

**IV.    Facts Giving Rise to Causes of Action**

11.    Plaintiff is a Certified Public Accountant and Certified in Financial Forensics, a member of the American Institute of Certified Public Accountants ("AICPA"), the Forensic And Valuation Services Section of the AICPA, and the Tax Section of the AICPA.  During her nearly 22 year career, plaintiff has had extensive experience in finance, business development, public accountancy and forensic accountancy, and in detecting fraud, waste and abuse and implementing appropriate loss prevention and other efficiency enhancing controls.  She has represented clients and interacted with numerous governmental agencies, including the Department of Treasury-Internal Revenue Service, the United States Department of Labor, the Pennsylvania Department of Labor, the Pennsylvania Human Relations Commission, the Pennsylvania Department of Revenue, the Philadelphia Department of Revenue, the City of Philadelphia Department of Health, the Montgomery County Department of Health, and local law enforcement.

12.    Plaintiff served as Special Assistant to the Secretary of Health of the Commonwealth of Pennsylvania during the period from February 28, 2011 until she was improperly and wrongfully terminated on February 27, 2012.  Plaintiff reported directly to Dr. Eli N. Avila, Secretary of Health of the Commonwealth of Pennsylvania.  It was specifically agreed, at the time plaintiff was hired, that she would "function[] with considerable latitude and authority on a broad range of matters, i.e., administrative, operations and policy matters."  Given the important watchdog function of the job she was undertaking, and given the fact that her job responsibilities included reviewing established compliance within the Department of Health's

7

policies and procedures in order to ferret out waste, fraud and corruption, plaintiff would not

have taken the job without the expressed assurance, understanding and agreement that she would

"function[] with considerable latitude and authority on a broad range of matters, i.e.,

administrative, operations and policy matters." Because of the nature of her job responsibilities,

plaintiff needed "considerable latitude and authority on a broad range of matters" in order to

carry out her watchdog responsibilities without improper interference and obstruction from those

with a vested interest in perpetrating the status quo and in impeding and obstructing the

watchdog function that plaintiff had undertaken. The access and latitude that plaintiff was

promised when she was hired and that the Department assured her she would have became a

victim of defendants' determination to cover up the matters plaintiff identified when she did the

job she was hired to do.

      13.    Plaintiff's responsibilities at the Department of Health were broad and far ranging,

and included among other things:

         (a)    analyzing policy and program proposals and initiatives to determine

acceptability, assure compatibility and avoid duplication of work and

ensuring that Departmental programs and initiatives have direct consumer

involvement and were consumer friendly;

         (b)    developing and maintaining effective writing relationships with associates,

managers, advocacy groups, consumers and the general public;

         (c)    representing the Secretary at meetings;

         (d)    presenting information and preparing written reports and correspondence;

         (e)    serving as primary contact point with deputies and staff, and with federal

and local government officials and advocacy groups;

8

(f)     helping to ensure that the Department and its staff followed all required and necessary protocols, procedures and requirements to ensure that the Commonwealth would continue to qualify and receive the full extent of federal resources available to the Commonwealth to carry out its health care mission;

(g)     analyzing policy and program proposals and initiatives to determine acceptability, assuring compatibility and avoiding duplication of work;

(h)     advising and assisting the Secretary in the establishment of Departmental goals and objectives;

(i)     identifying and resolving problems, researching issues and recommending appropriate actions;

(j)     provides advice on sensitive Department-wide matters and developing and maintaining writing relationships with associates, managers, advocacy groups, consumers and the general public;

(k)     advising and assisting the Secretary in the establishment of Departmental goals and objectives;

(l)     identifying and resolving problems;

(m)     researching issues and recommend actions;

(n)     serving as a primary contact point for the Secretary with program deputies and staff; federal and local government officials, and health care advocacy groups; and

9

(o)     serving as a member or liaison on special committees and task forces as

assigned by the Secretary, and when designated, chaired such committees

or task forces.

14.     While plaintiff's job responsibilities covered a wide array of programs and

functions that were administered and directed by the Department of Health, the areas on which

much of plaintiff's energies and efforts were focused were: (a) administration of federal funds

that are made available to the states under the Ryan White HIV/AIDS Program administered by

the Health Resource and Services Administration ("HRSA") of the United States Department of

Health and Human Services ("HHS"); and (b) administration of federal funds that are made

available to the States through the Women and Infant Children ("WIC") program administered

by the United States Department of Agriculture ("USDA").  These were the primary (although

not the exclusive) areas when plaintiff identified and spoke out about the waste and mishandling

of vitally needed Commonwealth and federal funds, that led to her firing.

15.     Through her tireless diligence, dedication and hard work, plaintiff achieved

remarkable results at the Department of Health.  Specifically, among other things, she:

- identified and then renegotiated a contract with a vendor regarding birth

certificate fees, that resulted in hundreds of thousands of dollars in additional

revenues for the Commonwealth in the then current fiscal year and

substantially greater amounts in future years with increasing use of the

internet for the purpose of accessing birth certificates;

- streamlined the contracts/grant process so as to enhance the Commonwealth's

eligibility for additional funding which it had previously been unable to

obtain;

10

- re-established relationship with AACO (AIDS Activities Coordinating Office of the Philadelphia Health Dept.),

- revamped the invoicing and reporting procedures for the Ryan White Part B Program so as to allow for receipt of this information by the deadlines that must be met in order for the Commonwealth to qualify for federal funds; revised the Recertification of eligibility process for receiving Ryan White Part B funds.  The recertification process that had been developed by the Division of HIV/AIDS would have cut services to 5-10% of the people currently receiving services even though funding was available.

- proposed and implemented changes to licensing procedures so that the Commonwealth would be reimbursed for the cost of inspecting swimming pools at private amusement parks (including Hershey Park, Dorney Park, etc.), and hotels,  with resulting cost savings upwards of $500,000 per year (previously, these costly inspections were done by the Commonwealth at its expense, with no cost to the establishment);

- identified that lack of compliance with registration for privately owned summer camps as well as the need to change the licensing of these camps, at a cost savings of $150,000 per year; identified ways to increase internal control, better safeguard assets, strengthen monitoring of funds received by the Commonwealth under the master tobacco litigation settlement and administered as the CURE Program by the Department of Health.  This potentially increased funds to the Commonwealth by an estimated $750,000 to $1.2 million per year.

11

16.     Plaintiff worked tirelessly to address the wide range of health care challenges that were confronting the Department of Health, including;

- the streamlining and procedure changes in the Division of Contracts. Secretary Avila and plaintiff were told by Federal agencies that the Commonwealth of Pennsylvania has lost out on millions of federal funds because the Department of Health could not process a contract/grant through the system in time for the grantee to spend the money before the expiration of the grant.  Secretary Avila told plaintiff that this should be a priority.

- reviewing the software programs, the cost of which ranged from hundreds of thousand dollars to millions of dollars.  It took years and costly outside consultants to get these programs to work.  Plaintiff identified that after years and hundreds of thousands of dollars, these systems were inadequate.

- the repeated audit findings year after year that were not corrected.  Each year the Director of the Bureau of Administrative and Financial Services signed off on audits containing Corrective Action Plans that did not resolve the issues. Plaintiff was working on highlighting and resolving these repeated deficiencies.

- the spending of funds in the Secretary of Health's budget by Anne Baker, Deputy Secretary of Administration, without the Secretary of Health's knowledge or approval.

- misuse made on the PNC Purchasing credit cards issued to well over 100 employees in the Department of Health.

17.    The principal areas where plaintiff uncovered the mishandling of funds, waste and abuse related to three principal areas: administration of federal funds that are paid and made available to the state under the Ryan White HIV/AIDS Program administered by federal agencies HRSA and HHS; administration of federal funds that are paid and made available to the states through the WIC program administered by USDA; and inefficiencies and waste resulting in the inexplicable failure to pay tens of thousands of dollars in Department of Health telephone bills.

18.    Plaintiff performed her job admirably, diligently and tirelessly, and received repeated accolades for her work from Dr. Avila (the Secretary of Health, to whom she reported), and municipal public healthcare officials with whom she interacted. Indeed, even defendant Todd Shamash, the Governor's Deputy Chief of Staff, went out of his way to tell plaintiff that in September of 2011 he had met with the Commonwealth's Office of the Budget, and based on that meeting thanked and commended plaintiff, both on his own behalf and on behalf of the Office of the Budget, for all of the good and hard work that plaintiff was doing. Defendant Shamash did an about face several months later when he joined the other defendants in orchestrating plaintiffs' firing after she responded to inquiries by the Inspector General about the concerns she had raised. Plaintiff was doing her job too well and finding out too much. She had to go.

19.    By way of non-exclusive additional examples, by letter dated December 20, 2011, Philadelphia's Deputy Mayor for Health and Opportunity (Dr. Donald Schwartz) wrote to Secretary of Health Avila stating, in relevant part:

> On behalf of the Philadelphia Department of Public Health (PDPH), I want to express my thanks to you for assigning Fran Del Ciello to work with the department's AIDS Activity Coordinating Office (AACO). Ms. Del Ciello's expertise in forensic auditing has helped improved AACO's fiscal operations. She assisted us in analyzing various parts of the fiscal structure to provide more clarity and accountability. Additionally, she made several site

13

visits to provider agencies which helped to resolve programmatic issues in a timely and efficient manner.

It has been a pleasure working with Ms. Del Ciello and we look forward to a continued relationship with her.

20.     In a similar vein, two directors of the Mazzoni Center, a leading Philadelphia

provider of health and wellness services for the LGBT community and those afflicted with

HIV/AIDS wrote to the Secretary of Health commending plaintiff's tireless efforts to ensure that

providers such as the Mazzoni Center qualified for federal funds vital to sustain their life saving

mission. They wrote, in relevant part, that "[w]e are writing to express our appreciation for the

assistance and advocacy that Mazzoni Center has received from your Special Assistant, Fran Del

Ciello." After extolling plaintiff's actions to ensure that providers such as Mazzoni qualified for

federal funds under the Ryan White Act, they concluded by stating that "[w]e are appreciative to

Fran for her action as well as the openness of your Department in regard to this issue."

21.     Similar accolades were sent by numerous governmental officials and health care

providers throughout the Commonwealth. For example, the Executive Director of AIDSNET,

one of the seven regional Ryan White coalitions in the Commonwealth, wrote to the Secretary of

Health that she "had the distinct pleasure of consulting several times throughout this past year

with your Special Assistant, Francine Del Ciello-Blatt." She continued, in relevant part:

Mrs. DelCiello-Blatt has the ability to, first of all, put people at ease despite the importance of what is being discussed. She has a keen mind, goes to the right people to find out how the system is really working (or not working) and listens to possible solutions. She is not straight jacketed by a lack of imagination or creativity when looking for results. She wants things to work; and if the methodology in use is not working, she looks to find ones that will.

*  *  *

14

I have been at AIDSNET since 1999 and have seen some of the
systemic organizational barriers that often defy common sense and
make it difficult to satisfy our customers (clients, providers, PA-
DOH).  It is a pleasure working with Mrs. Del Ciello-Blatt who
knows what has to be done and looks for a solution that works to
meet the needs of the various entities at play.  Thank you for
choosing her as your Special Assistant.  I look forward to
continuing to consult with her and seeing the changes she makes.

22.     Likewise, a high ranking City of Philadelphia healthcare official, Jane Baker,

wrote the following note of appreciation to plaintiff on June3, 2011:

I wanted to take a moment out to personally say "Thank You" for
meeting with me & AACO staff in attempts to work through the
challenges we face with the state DOH.  Please know that I
sincerely appreciate your assistance, patience, understanding and
mainly your willingness to be honest & objective with regards to
both AACO & the State's mutual concerns.  Just know that I/we
want this to work out and do not want to have an adversarial
relationship with anyone, that would be unfortunate.  I don't think
we/ve ever had the expertise of a Forensic Auditor, you're smart
and have the knowledge, skills & abilities as well as the authority
necessary to review these contracts and decipher things as you
have.  What a difference this makes.  We look forward to working
with you, please do not hesitate to contact me or Dwight for
anything you need, again Thank You!!!

23.     On December 6, 2011, the Project Officer for the Division of HIV/AIDS of the

Pennsylvania Department of Health, Mr. Ted Danowski, wrote the following note of

appreciation to the Secretary of Health and to plaintiff:

I wanted to take the opportunity to express my gratitude to you and
Fran for allowing me to join you last Thursday for the World AIDS
Day events in Philadelphia.  As a project officer I often feel
trapped in the proverbial ivory tower and our meetings that day
served as a great opportunity for me to meet with and press the
flesh of those who depend on the work I do day in and day out.

I also wanted to point out that the resounding message which
echoed throughout each organization we met with that day.  And
that was the appreciation felt by our constituents in Philadelphia
over all the improvements made and the doors of communication

15

which have opened as a result of Fran's efforts since she has been with us here at the Department. One thing you had mentioned in our meeting with Mazzoni Center was how we at the Department of Health are fiduciaries in serving these federally funded programs and since it's not our money, we should be finding the best ways to deliver it so services can be delivered to those who need. Fran has done just that by removing unnecessary internal constraints to ensure my program once again functioned as it should. She has also built a strong relationship between our Department and the Philadelphia Department of Health where there had previously been more walls than any business and government relations I have ever witnessed. …. I serve no loyalties to anyone in this Department higher than the loyalties I serve to the patients and clients who depend on the grant that I manage. Therefore, the message I send to you is sincere that Fran has improved how this Department does business in delivering that grant and those clients are now and will continue to be served with greater efficiency and improved resources as a result.

As I have told Fran, it has been a breath of fresh air to have someone of her caliber and abilities come in unafraid of change and the cultural dogma which naturally occurs in a bureaucracy such as ours. I can say with conviction that, were it not for her arrival, we would still have near complete stagnation with delivering the Ryan White Part B program to Philadelphia and its surrounding region and I want to personally thank you for appointing her to the Department of Health. Please feel free in sharing this letter with anyone you feel would benefit from what I've shared and thank you for taking the time to read it.

A.     **Mishandling of Funds, Waste and Abuse In Administering the Federal Ryan White Program and Resulting Losses to the Commonwealth**

24.     The Ryan White Comprehensive AIDS Resources Emergency (CARE) Act ("Ryan White Care Act") which was enacted by the United States Congress in 1990 and named in honor of Indiana teenager Ryan White, who contracted AIDS through a tainted blood transfusion, and became a well-known advocate for AIDS research and awareness, until his death in 1990.

25.     The Ryan White Act is the United States' largest federally funded program for people living with HIV/AIDS. The Act sought funding to improve availability of care for low-

16

income, uninsured and under-insured victims of AIDS and their families. The Ryan White

Program works with cities, states, and local community-based organizations to provide HIV-

related services to more than half a million people each year. The program is for those who do

not have sufficient health care coverage or financial resources for coping with HIV disease. Ryan

White fills gaps in care not covered by these other sources, and funds treatment when no other

resources are available. The program provides funding to over 2,500 health care providers and

organizations to provide care to over some level 500,000 people per year. The Ryan White

programs also fund local and State primary medical care providers, support services, healthcare

provider training programs, and provide technical assistance to such organizations.

26.     Ryan White funds are administered through state and municipal governments, and

the states and municipalities are subject to rigorous oversight and auditing by HRSA in order to

establish that the funds will be properly used and that adequate and sufficient controls are

implemented and that Ryan White funds are properly used.

27.     Plaintiff discovered that the Commonwealth of Pennsylvania had missed out on

very substantial Ryan White funding because available funding was being mishandled and

reports were not submitted as required by HRSA.  The Commonwealth's record keeping was lax,

its internal controls were completely compromised, and as a result the vital federal funds that

were available to the Commonwealth were jeopardized.

28.     Rather than cooperate with plaintiff in connection with her efforts to address the

mishandling of Ryan White funds and to clean up the Ryan White Program, plaintiff met with

substantial resistance, indeed hostility, when she identified instances of waste and abuse with the

Ryan White Program and how it jeopardized the loss of millions of dollars in funds that the

Commonwealth would otherwise be entitled to.  In that regard, plaintiff's efforts were

17

consistently road-blocked by Weldon King, the Commonwealth's Program Administrator of the

Ryan White funds who consistently refused to give plaintiff and Ted Danowski, Program

Officer, information that plaintiff requested to fully assess the magnitude of the mishandling of

Ryan White funding and administration. Mr. King also took affirmative steps to sabotage

plaintiff's efforts to investigate and clean up the Department's handling, reporting and accounting

for Ryan White Part B funds. By way of non-exclusive example, defendant King, to whom

plaintiff reported these matters and who had the power, the authority and the duty to investigate,

address and correct them, attempted to deflect attention and scrutiny away from his own actions

by falsely and misleadingly blaming plaintiff and even Ryan White beneficiary agencies in the

City of Philadelphia for these abuses when the real cause of the mishandling, and misreporting

and waste of funds lay at the doorstep of Mr. King and his confederates. For example, defendant

King called Anita Edwards at HRSA and tell her about problems with the Philadelphia AIDS

Activity Coordinating Office ("AACO"), when he was no longer dealing with AACO. Mr. King

called Anita Edwards at HRSA and tell her that plaintiff knew nothing about Ryan White Part B.

Mr. King would give the coalitions directions contrary to what he was told. The Program

Director Joseph Pease and Bureau Director Heather Stafford, to whom plaintiff reported these

matters and who had the power, the authority and the duty to investigate and correct such

matters, did not correct the problem or investigate it appropriately. Nor did they discipline

Weldon King. They empowered him to run the program as he saw fit which meant they had

little involvement. As such, in obstructing plaintiff's efforts, and burying the concerns that she

had reported wrongdoing and waste to officials of the Department of Health, who had the power,

the authority and the duty to investigate and correct such matters, Mr. King sabotaged plaintiff's

efforts and silencing plaintiffs' voice when she was identifying and calling for investigative and

18

remedial efforts to stem the losses of desperately needed available funds.  Defendant did so with the intention to set plaintiff up to be fired.

**B.      Waste and Abuse In Administering the WIC Program**

29.      The WIC program provides federal grants to states for supplemental foods, health care referrals, and nutrition education for low-income pregnant, breastfeeding, and non-breastfeeding postpartum women, and to infants and children up to age five who are found to be at nutritional risk. The WIC target population are low-income, nutritionally at risk: pregnant women (through pregnancy and up to 6 weeks after birth or after pregnancy ends); breastfeeding women (up to infant's 1st birthday); non-breastfeeding postpartum women (up to 6 months after the birth of an infant or after pregnancy ends); infants (up to 1st birthday); and children up to their 5th birthday.

30.      The WIC program is administered at the Federal level by Food and Nutrition Service of the USDA and, at the state level, by nearly 100 state agencies, through approximately 47,000 authorized retailers.  WIC operates through 1,900 local agencies in 10,000 clinic sites, in 50 State health departments, 34 Indian Tribal Organizations, the District of Columbia, and five territories (Northern Mariana, American Samoa, Guam, Puerto Rico, and the Virgin Islands).

31.      Upon her appointment, plaintiff observed substantial shortcomings, inefficiencies, waste and abuses at the Department of Health in connection with the adminsitration of WIC program that resulted in the significant mishandling of such funds and placed the Commonwealth of Pennsylvania at substantial risk of losing millions of dollars in federal funds to which the Commonwealth was entitled. Among the significant problems that plaintiff identified with the WIC Program were:

(a)      that the Department of Health's QuickWIC software, which cost the Department millions of dollars to maintain and enhance, was being mis-

19

utilized in such a manner as to result in massive errors in the Department of Health's accounting and billing for infant formula costs and expenses, jeopardizing the Department's standing with WIC and the USDA and jeopardizing millions of dollars in WIC funds available to the Commonwealth, and giving rise to substantial claims being asserted against the Commonwealth by a major private vendor involved in the WIC program.

(b)    that the Department of Health's WIC Program was plagued by significant and material internal control deficiencies, thereby exposing WIC funds to fraud, mishandling and abuse, which also jeopardized the Department's standing with WIC and the USDA and jeopardizing millions of dollars in WIC funds available to the Commonwealth.

(c)    that the Department of Health was failing and neglecting to investigate and prosecute those who were improperly selling WIC provided infant formula on internet websites such as eBay and CraigsList.

32.    Rather than cooperate with plaintiff in connection with her efforts to clean up the WIC, plaintiff met with substantial resistance, indeed hostility, when she identified instances of mishandling of funds, waste, abuse and lax oversight with the WIC Program, just as she did with the Ryan White Program and the potential for the Commonwealth to lose millions of dollars in funds that it would otherwise be entitled to under WIC. Plaintiff repeatedly advised and reported such matters to defendant Baker, who had the power, the authority, and the duty to investigate and correct such matters, and consistently failed and refused to do so.

33.    Defendants Baker and Wolf were very concerned that plaintiff's persistent efforts to do her job would expose their mishandling of funds. They therefore took steps to shut her down, thereby undercutting the express assurances of autonomy and access that was the basis for her job and that Secretary Avila had directed that plaintiff have. On February 10, 2012, defendant Anne Baker, Deputy of Administration and whose deputate WIC was under, sent plaintiff an email (and copied all the bureau directors, secretary and executive assistant in Ms. Baker's deputate) informing plaintiff that she was no longer to meet with Ms. Baker's staff. In

addition to WIC, this would include, the Bureau of Family Health, the Divisions of both Contracts and Budgets, Bureaus of IT, HR and Vital Records and Health Statistics.

34.     Because plaintiff had uncovered and blown the whistle on numerous instances of abuse, as summarized above, as well as in connection with the CURE program described in this Complaint, she became a target of those who had a vested interest in covering these abuses up because they had either created these abuses themselves, or the abuses occurred on their watch and they tolerated them and covered them up in order to protect themselves, their reputations and their jobs, and potentially to avoid administrative or other potentially more serious proceedings, implications and sanctions.

35.     Indeed, plaintiff accordingly became the target of contrived criticism and hostility orchestrated by defendants Baker and Wolf. Defendants Baker and Wolf tried to sabotage plaintiff's credibility with the Secretary.

36.     Surprised because these assertions were out of character and inconsistent with Dr. Avila's own experience concerning plaintiff, Secretary Avila convened a meeting on November 28, 2011 that he, defendant Baker, defendant Wolf and plaintiff attended.

37.     Plaintiff was told at the meeting by defendant Baker that the staff were not accustomed to someone going directly to them and asking questions. This was a ruse. Defendant Baker's real concern was that she (Baker) remain in control of information so that she could cherry pick the information that plaintiff could see and obstruct plaintiff from learning the facts and the dreadful state of affairs with defendant Baker's administration of the WIC program. This was contrary to directions given to the Department of Health by the Secretary Avila. Dr. Avila told the Deputies to let their bureaus know that plaintiff should be given any information she requested and that she was permitted to go directly to the person who had the information. It was

21

decided at the meeting that plaintiff would copy Ms. Baker on any requests she had, but that she would still have full access to the staff and the information.

38.    Defendants Baker and Wolf thus had embarked upon a malicious campaign to punish plaintiff because she had blown the whistle on the mishandling of public funds, as summarized in this Complaint. Indeed, defendants Baker and Wolf concocted false, malicious and defamatory, orchestrating a campaign to solicit and encourage certain of their key allies at the Department of Health to report scripted and coordinated falsehoods about plaintiff (the full substance of which they have never fully disclosed to her), contrary to established Department procedures. Despite plaintiff's repeated requests, defendant Baker concealed the specifics of the complaints to plaintiff, referring plaintiff instead to a Management Directive on workplace violence. Plaintiff responded that this must be an inadvertent clerical error as workplace violence was never discussed with plaintiff. She asked for the correct Management Directive as well as who conducted the investigation and what policy and procedure was used for the investigation. Plaintiff never received a response.

39.    In January, 2012, plaintiff received a request from Mr. John Kaschak, Director of Audit, Office of the Budget, to look into the problem of WIC recipients improperly selling infant formula on the internet. Plaintiff met with Mr. Kaschak to discuss the issue. Plaintiff researched the problem and presented Secretary Avila a report with her findings and recommendations. This report was also given to and discussed with Mr. Kaschak.

40.    In January, 2012, the Department of the Auditor General released the Single Audit Findings on the Special Supplemental Nutrition Program for Women, Infants and Children. There had been similar findings for 5 years in a row. The findings were sent to the WIC Program for response. The responses given were similar to the prior years and did not

address the issue in detail nor would have corrected the issues.  Plaintiff met with the Program

Director and Program Administrator  and did additional research at which time plaintiff found

out there were more problems in the program.

   · 41.     Plaintiff emailed Ms. Baker and Ms. Belonus (Bureau Director) about the

problem.  She illustrated that substantial healthcare funds were being misapplied.  Both had the

power, the authority and the duty to investigate and correct such matters.  Plaintiff requested

additional information (on behalf of the Secretary of Health).   Details were not provided to

plaintiff. This was in February, 2012.

   42.     On February 15, 2012 plaintiff and Mr. Wolf met with Mr. Kevin Concannon,

Ms. Patricia Dombroski and Dr. Kisha Davis from the US Department of Agriculture.  Secretary

Avila had to go to New York to tend to an urgent family medical emergency, so he was not in

attendance.  The meeting was about WIC and the issue with the unlawful sales of infant formula

on the internet.  Later that afternoon, Tabbitah Bosack, Dr. Avila's secretary, came to plaintiff's

office and told her that the Inspector General was on the telephone and wanted to speak with her.

Plaintiff spoke with Inspector General Kendra Faulkner, who had the power, the authority and

the duty to investigate and correct such matters.  The Inspector General told plaintiff that the

representatives from the US Department of Agriculture had met with her after the meeting at the

Department of Health.  The Inspector General wanted to know what plaintiff and Mr. Wolf  told

the representatives.  The Inspector General also told plaintiff that the USDA was going to give

the Commonwealth money to look into the problems with the WIC Program.  The Inspector

General asked plaintiff if she would assist with the investigation.  The Inspector General asked

plaintiff to contact Mr. Wes Rishy (General Counsel-Office of the Inspector General) to set up a

meeting.  Plaintiff told the Inspector General that she would clear this with Secretary Avila

which she did.  Plaintiff contacted Mr. Rishy.  The meeting was set up for Thursday, February 23rd at the Office of the Inspector General.

43.     On Thursday, February 23rd before going to the meeting, plaintiff met with Mr. Wolf and told him she was attending this meeting and that Dr. Avila approved.  She told Mr. Wolf she would brief him after the meeting.

44.     Plaintiff met with Mr. Rishy and Mr. Tony Fiore, an Investigator for the Office of Inspector General.  They asked plaintiff for the background on the issues with WIC.  They said the Inspector General's office would take over the investigation and that plaintiff would be their contact in the Department of Health.  They also discussed the other issues in the Department of Health and told plaintiff to get back to them with any other issues she wanted to investigate.

45.     Upon returning to her office, plaintiff briefed Mr. Wolf on the meeting.  Mr. Wolf got very upset and said that the Inspector General's office had no business investigating these and any other issues.  He said the Inspector General's office was only there to investigate employees who steal.  He was quite adamant about this.

46.     On Monday morning, February 27, 2012, at 9am Mr. Shamash and Mr. James Honchar met with Dr. Avila.  After about 15 minutes Mr. Honchar and Dr. Avila came into plaintiff's office.  Mr. Honchar told plaintiff that the Governor was terminating her.  Dr. Avila was only informed at 9am.  Defendant Shamash participated, materially, in plaintiff's firing.

47.     As a result of her termination, plaintiff has suffered substantial economic losses, including lost earnings and benefits, lost reimbursement vacation days and pension.

48.     As a result of her termination, plaintiff has experienced pain and suffering, loss of enjoyment of life, and other non-economic losses.

24

## COUNT I

### First Amendment Retaliation - 42 U.S.C. § 1983

49.   Plaintiff incorporates by reference paragraphs 1 through 48 as if fully set out in this paragraph.

50.   Plaintiff reports concerning the mishandling of funds, waste and abuse, all as set forth and summarized above, constituted speech that is protected by the First Amendment to the United States Constitution.

51.   Plaintiff's employment was terminated, in substantial part, to retaliate against her for the exercise of her First Amendment protected speech, and to chill and suppress plaintiff's First Amendment rights.

52.   Defendants Baker, Shamash and Wolf acted under color of state law when they effectuated plaintiff's termination.

53.   Defendants Baker, Shamash and Wolf did not have adequate justification to retaliate against plaintiff, because of her protected speech.

WHEREFORE, plaintiff prays for the following relief:

   (a)   an award of damages to compensate her for her economic loss;

   (b)   an award of compensatory damages to compensate her for her non-economic losses;

   (c)   an award of punitive damages;

   (d)   an award of costs, including reasonable attorney fees and witness fees; and

   (e)   such other relief as the Court deems appropriate.

## COUNT II

### Pennsylvania Whistleblower Law
### 43 PA.CONS.STAT. § 1421, *et seq.*

54.     Plaintiff incorporates by reference paragraphs 1 through 53 as if fully set out in this paragraph.

55.     This Count is asserted under and pursuant to the provisions of Pennsylvania's Whistleblower Law, 43 P.S. § 1421 *et seq.*, which makes it unlawful for an employer to "discharge, threaten or otherwise discriminate or retaliate against" an employee for making a good faith report to a superior or to an "appropriate authority" about an instance of "wrongdoing or waste."

56.     Plaintiff reports to the individuals identified in this Complaint and to the Inspector General constituted good faith reports of wrongdoing or waste to the appropriate authorities to individuals who had the power, the authority and the duty to investigate, address, and correct such matters.

57.     Defendants terminated, and participated in the termination, of plaintiff's employment, at the instigation of individual defendants Baker, Wolf and their allies, because plaintiff made good faith reports to the appropriate authorities of matters covered by the Whistleblower Law.

WHEREFORE, plaintiff prays for the following relief:

(a)     an award of damages to compensate her for her economic loss;

(b)     an award of compensatory damages to compensate her for her non-economic losses;

(c)     an award of punitive damages;

(d)     an award of costs, including reasonable attorney fees and witness fees; and

26

(e)  such other relief as the Court deems appropriate.

## COUNT III - CIVIL CONSPIRACY

58.  Plaintiff incorporates by reference paragraphs 1 through 57 as if fully set out in this paragraph.

59.  Defendants Baker, Shamash and Wolf combined and/or agreed that they would engage in the acts identified above.

60.  Defendants did so with the malicious intent that they would by their unlawful conduct and agreement cause harm to plaintiff.

61.  As a result of defendants' conduct, plaintiff suffered and continues to suffer harm to her reputation, and financial harm.

62.  Defendants Baker, Shamash and Wolf, as co-conspirators are vicariously liable for the actions, conduct and statements of each other.

63.  Defendants' conduct in entering such civil conspiracy was so reckless, wanton, willful and malicious that defendants should be punished by the assessment of punitive damages.

WHEREFORE, plaintiff prays for the following relief:

(a)  an award of damages to compensate her for her economic loss;

(b)  an award of compensatory damages to compensate her for her non-economic losses;

(c)  an award of punitive damages;

(d)  an award of costs, including reasonable attorney fees and witness fees; and

(e)  such other relief as the Court deems appropriate.

## COUNT IV - AIDING AND ABETTING

64.　Plaintiff incorporates by reference paragraphs 1 through 63 as if fully set out in this paragraph.

65.　Defendants Baker, Shamash and Wolf in the conduct described in this Complaint in concert with each other in that all defendants acted in accordance with an agreement to cooperate in a particular line of conduct and/or to accomplish a particular result.

66.　Defendants Baker, Shamash and Wolf knew that the conduct of each of them was tortuous and each provided substantial assistance and/or encouragement to engage in such tortuous conduct.

67.　As a result of defendants' conduct, plaintiff suffered and continues to suffer harm to her reputation, and financial harm.

68.　Defendants Baker, Shamash and Wolf, as co-conspirators are vicariously liable for the actions, conduct and statements of each other.

69.　Defendants' conduct in aiding and abetting such tortuous conduct was so reckless, wanton, willful and malicious that defendants should be punished by the assessment of punitive damages.

WHEREFORE, plaintiff prays for the following relief:

(a)　an award of damages to compensate her for her economic loss;

(b)　an award of compensatory damages to compensate her for her non-economic losses;

(c)　an award of punitive damages;

(d)　an award of costs, including reasonable attorney fees and witness fees; and

(e)　such other relief as the Court deems appropriate.

28

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: June 6, 2012

Respectfully submitted,

**BOLOGNESE & ASSOCIATES, LLC**

By: _Anthony J. Bologgnese_
Anthony J. Bolognese
Joshua H. Grabar
Two Penn Center
1500 John F. Kennedy Blvd., Ste. 320
Philadelphia, PA  19102
Telephone: (215) 814-6750
Facsimile: (215) 814-6764

**Attorneys for Plaintiff**
**Francine Del Ciello-Blatt**

29

## VERIFICATION

I, Francine Del Ciello-Blatt, hereby verify that I am the plaintiff in this case and have read the foregoing Complaint and hereby verify that the factual matters set forth in the foregoing are true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing are that of counsel, I have relied upon our counsel in making this verification. I understand that this verification is made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.

Francine Del Ciello-Blatt

*Del Ciello-Blatt v. Baker, et al.*

# EXHIBIT B

## Middle District of Pennsylvania 6/28/12 Order

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCINE DEL CIELLO-BLATT,            :
       Plaintiff                             :
                                             :
                                             :
       v.                                    :   CIVIL NO. 1:12-CV-1225
                                             :
ANNE BAKER, *et al.*,                 :
       Defendants                            :

*O R D E R*

AND NOW, this 28th day of June, 2012, upon consideration of

Defendants' motion (Doc. 2) to withdraw notice of removal, it is ORDERED that said

motion is GRANTED.  The above-captioned case shall be returned by the Clerk to the

Philadelphia County Court of Common Pleas.

                           /s/ William W. Caldwell
                           William W. Caldwell
                           United States District Judge

*Del Ciello-Blatt v. Baker, et al.*

# EXHIBIT C

## Notice of Removal

Sarah C. Yerger
Senior Deputy Attorney General
Pa. I.D. No. 70357
Office of Attorney General
Litigation Section
15th Fl., Strawberry Square
Harrisburg, PA  17120
(717) 705-2503 - Direct
(717) 772-4526 - Fax
*Counsel for Defendants*

IN THE PENNSYLVANIA COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

| | |
|---|---|
| FRANCINE DEL CIELLO-BLATT,<br>**Plaintiff**<br><br>v.<br><br>ANNE BAKER, TODD SHAMASH,<br>MICHAEL WOLF, and PENNSYLVANIA<br>DEPARTMENT OF HEALTH,<br>**Defendants** | JUNE TERM 2012<br><br>NO. 000604<br><br><br>JURY TRIAL DEMANDED |

**NOTICE OF REMOVAL**

To:    Joseph H. Evers, Prothonotary
Office of the Prothonotary
PHILADELPHIA COUNTY COURT OF COMMON PLEAS
First Judicial District of Pennsylvania
Room 284 City Hall
Philadelphia, PA 19107

and

Anthony J. Bolognese, Esquire
Joshua H. Grabar, Esquire
BOLOGNESE & ASSOCIATES, LLC
Two Penn Center
1500 John F. Kennedy Blvd., Suite 320
Philadelphia, PA  19102

**PLEASE TAKE NOTICE** that, in accordance with 28 U.S.C. § 1446, a Removal

Petition and a Notice of Removal were filed in the United States District Court for the Eastern

**Sarah C. Yerger**
**Senior Deputy Attorney General**
**Pa. I.D. No. 70357**
**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA 17120**
**(717) 705-2503 - Direct**
**(717) 772-4526 - Fax**
*Counsel for Defendants*

### IN THE PENNSYLVANIA COURT OF COMMON PLEAS
### PHILADELPHIA COUNTY

| | |
|---|---|
| **FRANCINE DEL CIELLO-BLATT,**<br>**Plaintiff** | **JUNE TERM 2012** |
| **v.** | **NO. 000604** |
| **ANNE BAKER, TODD SHAMASH,**<br>**MICHAEL WOLF, and PENNSYLVANIA**<br>**DEPARTMENT OF HEALTH,**<br>**Defendants** | **JURY TRIAL DEMANDED** |

### NOTICE OF REMOVAL

To:     Joseph H. Evers, Prothonotary
        Office of the Prothonotary
        PHILADELPHIA COUNTY COURT OF COMMON PLEAS
        First Judicial District of Pennsylvania
        Room 284 City Hall
        Philadelphia, PA 19107

        and

        Anthony J. Bolognese, Esquire
        Joshua H. Grabar, Esquire
        BOLOGNESE & ASSOCIATES, LLC
        Two Penn Center
        1500 John F. Kennedy Blvd., Suite 320
        Philadelphia, PA 19102

**PLEASE TAKE NOTICE** that, in accordance with 28 U.S.C. § 1446, a Removal

Petition and a Notice of Removal were filed in the United States District Court for the Eastern

District of Pennsylvania on this date, removing the above-captioned action to federal court.  A

true and correct copy of the Removal Petition is attached hereto.

                                        Respectfully submitted,

                                        LINDA L. KELLY
                                        Attorney General

                            By:

                                        SARAH C. YERGER
                                        Senior Deputy Attorney General
                                        Attorney I.D. #70357

Office of Attorney General            GREGORY R. NEUHAUSER
Litigation Section                    Chief Deputy Attorney General
15th Floor, Strawberry Square         Chief, Litigation Section
Harrisburg, PA  17120
Direct:  717-705-2503                 *Counsel for Defendants*
Fax:     717-772-4526

Date:  June 29, 2012

## CERTIFICATE OF SERVICE

I, Sarah C. Yerger, Senior Deputy Attorney General, hereby certify that on June 29, 2012,

I caused to be served the foregoing **NOTICE OF REMOVAL**, by depositing a copy of same in the

United States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania upon the following:

Anthony J. Bolognese, Esquire
Joshua H. Grabar, Esquire
**BOLOGNESE & ASSOCIATES, LLC**
Two Penn Center
1500 John F. Kennedy Blvd., Suite 320
Philadelphia, PA  19102

By: _____
**SARAH C. YERGER**
**Senior Deputy Attorney General**